IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No: 17 B 14970 |
| | ) | |
| SOYNUT BUTTER COMPANY, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge LaShonda A. Hunt |

## MEMORANDUM OPINION

Debtor SoyNut Butter Company ("SoyNut") has been sued by a number of consumers who allegedly ingested contaminated SoyNut products. The Chapter 7 Trustee, Gus A. Paloian, ("Trustee"), seeks to resolve those tort claims, as well as an adversary proceeding he filed against Dixie Dew Products, Inc. ("Dixie Dew"), a manufacturer and distributor of SoyNut products and co-defendant in those lawsuits, with a global settlement that channels the proceeds from commercial liability policies issued by insurers Sentinel Insurance Company, Ltd. ("Sentinel") and Selective Insurance Company of South Carolina ("Selective") into a fund for distribution to the injured parties, and enjoins any further claims under the policies. Several distributors and vendors of SoyNut products, who are also additional insureds under the Sentinel policy, have objected to the breadth of the release, as it also bars them from seeking any relief for claims covered by the policy. The parties have engaged in extensive briefing and oral argument on the issues. For the reasons that follow, the court agrees that the proposed injunction cannot be approved.

## BACKGROUND

The facts are largely undisputed. SoyNut marketed SoyNut Butter, a nut-free substitute for peanut butter, and other products, that were manufactured by an independent third-party, Dixie Dew, in Kentucky. In March 2017, the Food and Drug Administration and Center for Disease

Control notified SoyNut of a multi-state outbreak of illness linked to E.coli bacteria in SoyNut products. A voluntary nationwide recall of specific SoyNut products and FDA shutdown of Dixie Dew's food processing plant for SoyNut Butter followed. Not long thereafter, lawsuits and claims were filed against SoyNut and Dixie Dew seeking damages for "bodily injury" sustained after ingesting E.coli contaminated products.

SoyNut subsequently filed this Chapter 7 bankruptcy petition in May 2017, which somewhat slowed the race to the courthouse. Still, damages in the cases are expected to exceed $75,000,000. Further, counsel for Dixie Dew recently indicated that their client will be filing a voluntary Chapter 7 petition in the near future to similarly liquidate its remaining assets in order to address the extensive physical injury claims. It is fair to say, then, that tort claimants comprise the bulk of creditors in SoyNut's Estate ("Estate"), and the primary assets appear to be the proceeds of the Selective and Sentinel insurance policies.

The Selective policy provides for primary bodily injury commercial general liability coverage to Dixie Dew as a named insured, and SoyNut as an additional insured, with a maximum limit during the relevant policy period of $6,000,000. In August 2017, the Trustee filed an adversary complaint against Dixie Dew, seeking, among other things, a declaratory judgment that Dixie Dew was required to indemnify and defend SoyNut with respect to the E.coli tort claims. *See Paloian v. Dixie Dew Products*, 17ap00431 (Bankr. N.D. Ill.).

Similarly, Sentinel issued primary commercial general liability and umbrella liability insurance policies to SoyNut as the named insured, with an occurrence limit of $5,000,000, and aggregate limit of $6,000,000, during the relevant policy period. SoyNut then entered into indemnification agreements with several distributors and retailers of its products, that, among other

2

things, required SoyNut to name those vendors as additional insureds under its applicable insurance policies.

Faced with an abundance of creditors and limited assets, the Trustee began engaging in extensive negotiations with Dixie Dew, counsel for the injured parties, and Selective and Sentinel, to reach a resolution that would bring funds into the Estate to satisfy the tort claims. The compromise the Trustee has asked the court to approve contains three key elements – funding from the insurers, timely claim submission and evaluation of damages, and distribution of payments in exchange for a release.

Essentially, Sentinel and Selective have agreed to pay their respective "policy limits" into a fund that will be used to compensate injured parties who file claims under the E.coli physical injury claim settlement and distribution procedure, and to cover the associated administrative costs of the process. So, the Estate would collect $6,000,000 from Selective, $5,250,000 from Sentinel, and $300,000 from each insurer to cover administrative costs, for a total of $11,850,000.[1] Those proceeds would be used to fund settlements to tort claimants who timely submit supporting evidence of injuries to an independent evaluator for a damages assessment. In exchange for those payments, claimants agree to release SoyNut, Dixie Dew and the insurers from any further claims. In the event that those funds are insufficient to cover the full amount of assessed damages, after allowance of a dollar-for-dollar reduction for payments through this process, claimants can pursue further settlements with other potentially liable parties, e.g., the additional insureds, in exchange for releases of liability.

---

[1] The Trustee also acknowledges that "counsel for certain of the personal injury claimants is contributing $100,000 (plus the costs of publication notice)," but is not seeking separate court approval for that agreement. (Trustee Mot. to Approve, Dkt. #60, at 2). Furthermore, Sentinel later agreed to add an additional $25,000 to the Estate for distribution to other general unsecured creditors of non-E.coli related claims. (Sentinel Reply Br. In Support of Trustee's Mot. To Approve, Dkt. #91, at 5).

No interested parties opposed the claim submission and evaluation procedure; as such, notice of the deadline to file claims and proposed settlement was approved. (Order dated 4/25/18, Dkt. #85). And no objections have been raised to the Selective settlement. But the Trustee needs funding from Sentinel to make this settlement viable and that is where the dispute arises. Three additional insureds under the Sentinel policy, Mitsui Sumitomo Marine Management (U.S.A.) ("Mitsui")[2], Kehe Distributors, LLC ("Kehe"), and Safeway, Inc. ("Safeway"), collectively ("Objecting Parties"), have filed objections to the Trustee's proposed settlement agreement and insurance buy-back with Sentinel ("Sentinel Settlement"), specifically challenging the broad release that would enjoin them from pursuing any further claims under the policy against Sentinel.

The Sentinel Settlement requires the following:

> a permanent injunction pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code . . . permanently enjoining the prosecution, continuation or commencement of any Interest . . . that any Person holds or asserts or may in the future hold or assert against [Sentinel], arising out of, in connection with and/or in any way related to any of the Policies (including E.Coli claims and any Claim by any Person claiming to be an additional insured or otherwise claiming to be entitled to any insurance coverage under the Policies), and providing that any such Interest may be asserted only against the Settlement Amount.

(Proposed Settlement Agreement, Dkt. #60-1, ¶17). Furthermore, sections 2.3 and 2.4 state that upon payment of the Settlement Amount, all rights of any person, SoyNut, tort claimants and additional insureds, with respect to the Policies shall be "permanently and irrevocably" extinguished. (*Id.*)

The Objecting Parties contend that this release of their third-party claims against a non-debtor in a Chapter 7 liquidation goes too far by impairing their contractual rights as additional

---

[2] Mitsui is the insurer of World Finer Foods, LLC, an additional insured under the Sentinel policy.

4

insureds to seek indemnification and defense under the Sentinel policy[3], as well as their non-bankruptcy law right to pursue a bad faith action against Sentinel for settling with one insured for the "policy limits" to their detriment. The Trustee, on the other hand, argues that the global settlement is fair and reasonable, in that two valuable assets will be converted to cash and used to fund payments to severely injured claimants, many of whom are children, with rights to the policy proceeds. Characterizing this as a win-win for all involved, the Trustee asserts that pending claims for E.coli related damages will be resolved in an orderly fashion through the settlement and distribution process. Furthermore, the evaluation assessment affords additional insureds a "free look" at damages, and an opportunity to settle now and avoid expensive litigation. Finally, Sentinel insists that its decision to settle with SoyNut – the named insured who has already been sued – for the policy limits is proper under applicable non-bankruptcy law and thus the settlement terms should be upheld.[4]

## DISCUSSION

### I. Authority under sections 105(a) and 363(f) of the Bankruptcy Code

At issue here is whether the injunction in the Sentinel Settlement should be approved. Although the Trustee argues otherwise, this situation is strikingly similar to *In re Forty-Eight Insulations, Inc.*, where Judge Barliant rejected the Chapter 11 debtor's request to approve a settlement with several of its insurers. 133 B.R. 973 (Bankr. N.D. Ill. 1991), *aff'd* 149 B.R. 860 (N.D. Ill. 1992). There, debtor Forty-Eight Insulations, Inc. sought to use the settlement proceeds

---

[3] The Objecting Parties allege that as distributors and suppliers of SoyNut products, all have been threatened with suit, and those claims have been tendered to SoyNut and Sentinel for indemnification and defense. However, actual lawsuits concerning the E.coli outbreak have been filed against SoyNut and Dixie Dew only.

[4] Mitsui recently filed an adversary complaint against the Trustee and Sentinel, alleging, among other things, breach of Sentinel's duties under the insurance contract. (*Mitsui Sumitomo Marine Mgmt (U.S.A.) Inc. v. Paloian, et al.*, 17ap14970 (Bankr. N.D. Ill.). Both the Trustee and Sentinel have moved to dismiss the complaint. Those matters have been stayed pending resolution of the Trustee's motion to approve the settlement.

5

to fund a liquidating Chapter 11 plan under which all of its assets would be distributed to tort claimants with asbestos-related injuries and the approved professionals in the case. *Id.* at 975. Forty-Eight's parent, FWC, objected to an injunction barring future claims by FWC, the named insured, under these policies. *Id.* Judge Barliant concluded that section 105(a) of the Bankruptcy Code ("Code") did not authorize the court "to enjoin a named insured, who is neither a debtor in this bankruptcy nor a creditor of the Debtor, from asserting claims under an insurance policy that it contracted and paid for." *Id.* at 976. He reasoned that:

> "[the] broad release language would impair FWC's rights under the policies. FWC has a contract with the insurers that allows it to make claims directly against the insurers upon the happening of specified conditions. If the settlement agreement and proposed order are approved, this right will no longer exist."

*Id.*

That is essentially what the Trustee asks this court to do here. True, SoyNut is the named insured who paid for the policy, and the Objecting Parties are additional insureds reaping the benefits. Nevertheless, the Objecting Parties' contention that the Sentinel policy affords them equal and independent rights to seek indemnification and defense has not been disputed. For all intents and purposes, then, the Objecting Parties, as additional insureds, have the same protected right to pursue a claim against the insurer here, as FWC, the named insured, had in *Forty-Eight Insulations*.

The Trustee maintains that *Forty-Eight Insulations* is materially distinguishable, though, because he is proposing a "free and clear" sale under section and 363(f) of the Code, which allows effectuating injunctions that terminate all competing "interests." His view is that to the extent the Objecting Parties have rights here, a broad release is appropriate, so long as the policy proceeds attach to the settlement. But that argument puts the cart before the horse. Section 363(f) authorizes "free and clear" sales under section 363(b) for *property of the estate*. SoyNut's insurance policies

6

and its resulting contractual right to the proceeds under those policies undoubtedly constitute property of the estate, as defined by section 541. *See Forty-Eight Insulations*, 133 B.R. at 977; *St. Paul v. Home Depot*, 2004 WL 2075129, at *2 (N.D. Ill. Sept. 14, 2004). However, that does not mean *all* of the policy proceeds belong *solely* to the estate. In fact, the answer to that question turns on the nature of the policy. *See In re Caesars Entertainment Operating Co, Inc.*, 533 B.R. 714, 734 (Bankr. N.D. Ill. 2015), *rev'd on other grounds*, 808 F.3d 1186 (7th Cir. 2015).

In *Caesars*, the bankruptcy court considered a broadly written policy that provided coverage to the Chapter 11 debtor, non-debtor parent company and other subsidiaries, along with all of their respective directors and officers. Because the debtor and objecting non-debtor had the "same organization coverage," the court found the additional insureds held "independent rights to the policy proceeds, rights that are [their] property alone." 533 B.R. at 734, *citing In re Petters Co.*, 419 B.R. 369, 375 (Bankr. D. Minn. 2009) (recognizing that "'any additional insured has a contractually-distinct status that runs directly between itself and the insurer,' so that 'the right to receive payment on a covered claim [is] the property of that insured itself'"). As such, even though the debtor's rights in the proceeds constituted estate property, they could not trump an additional insured's "equal and independent right to the policy proceeds," which are not estate property. *Caesars*, 533 B.R. at 735.

The same principle holds true here. Ultimately, SoyNut is selling its contractual right to the policy proceeds back to Sentinel. That is all the Estate owns, and by definition, that is all it can sell under section 363(b). And nothing in section 363(f), including the broad definition of "interest," authorizes the Trustee to use "free and clear" sales to expand SoyNut's rights beyond those allowed by the Bankruptcy Code. The Objecting Parties are entitled to exercise their right to seek indemnification and defense under the Sentinel policy until the policy limits are exhausted.

*Caesars*, 533 B.R. at 735; *St. Paul v. Home Depot*, 2004 WL 2075129, at *2 (N.D. Ill. Sept. 14, 2004). Because their contractual non-Estate owned rights are not implicated under section 363(b), they certainly cannot be diminished by a "free and clear" sale of Estate property under section 363(f).

The Trustee and Sentinel urge this court to follow the Second Circuit's decision in *In re Johns-Manville Corp.*, that affirmed the bankruptcy court's authority to approve a section 363 sale involving a mass tort settlement of asbestos claims with an effectuating injunction barring further suits against the debtor's insurers. 837 F.3d 89 (2d Cir. 1988). MacArthur, a distributor of the Chapter 11 debtor's products and co-insured pursuant to a "vendor endorsement" contained in some of the insurance policies, opposed the broad release on the grounds that its contractual rights could not be lawfully extinguished by an injunctive order. *Id.* at 91. The *Johns-Manville* court disagreed, explaining that:

> [C]laims against the insurers based on [debtor's] policies are not extinguished; they are simply channeled away from the insurers and redirected at the proceeds of the settlement. The Bankruptcy Court properly issued the orders pursuant to its equitable and statutory powers to dispose of the debtor's property free and clear of third-party interests and to channel those interests to the proceeds thereby created.

*Id.* In reaching that conclusion, the court expressly rejected MacArthur's argument of "separate and distinct" contractual rights and found instead that it was in the same position as the asbestos victims:

> The vendor endorsements cover only those liabilities resulting from [MacArthur's] status as a distributor of [debtor's] products. The endorsements are limited by the product liability limits of the underlying [insurance] policies. . . . MacArthur's right as an insured vendor are completely derivative of [debtor's] rights as the primary insured. . . . MacArthur asserts contractual obligations whereas the direct action plaintiffs' claims sounded in tort; nevertheless, in both instances, third parties seek to collect out of the proceeds of [debtor's] insurance policies on the basis of [debtor's] conduct.

*Id.* at 92-93.

8

This court finds that reasoning unpersuasive. First, the Second Circuit does not provide any rationale for deeming MacArthur's interests in the insurance policies property of the estate subject to a section 363 sale. *See, e.g., Forty-Eight Insulations*, 133 B.R. at 978 (criticizing the holding since "[a]nother party's interests do not become property of the estate, and therefore cannot be sold under section 363, which deals with sales of only property of the estate"). As this court has already explained, *supra* at 7-8, other courts considering the post *Johns-Manville* have concluded otherwise in well-reasoned and convincing decisions. Additionally, the *Johns-Manville* court failed to offer any factual basis for construing MacArthur's co-insured status under the policy as a derivative right that is essentially equivalent to an injured tort claimant. Perhaps the policy there included language to support that proposition. But in this case, nothing has been presented to the court to suggest that the Objecting Parties, as additional insurers, should be similarly limited.

As far as the court can tell, the policy language gives all insureds under the policy "the right to make direct claims on the insurers if the conditions of the policies are satisfied . . . . rights to be defended and to indemnification that do not depend upon a prior resolution any of claim against [the debtor]." *Forty-Eight Insulations*, 133 B.R. at 978. During the hearing, the court inquired about downstream distributors and the risk of liability for physical injuries apart from SoyNut and Dixie Dew. Counsel for Objecting Party Safeway represented that some states have laws imposing strict liability for these types of tort injuries. Given that SoyNut is already in bankruptcy and Dixie Dew is apparently well on its way to filing, there is a real possibility that the Objecting Parties may be left to cover significant judgments. The Trustee and Sentinel do suggest that the Objecting Parties cannot be held legally responsible for injuries stemming from consumption of E.coli contaminated products as mere distributors, but neither cites to policy language to support their position. In sum, it has not been established here that the Objecting

Party's rights are derivative of SoyNut's rights under the Sentinel policy. Therefore, the court finds *Johns-Manville* inapplicable and declines to apply its holding here.

## II.     Application of non-bankruptcy law

Sentinel challenges the Objecting Parties' actions as an improper attempt to expand their rights under relevant non-bankruptcy law that should not be allowed. According to Illinois law – which the parties have said governs the Sentinel dispute – settling with an insured for the policy limits is not only appropriate but, more importantly, doing so extinguishes any further obligation to indemnify or defend. *See Zurich Ins. Co. v. Raymark Industries*, 514 N.D.2d 150, 163 (Ill. 1987) ("We therefore hold that when an insurer has properly exhausted its policy limits by the payment of judgments and/or settlements, it is no longer obligated to defend any actions against [insureds], whether such actions are pending at the time of exhaustion or commenced thereafter."). In other words, to the extent the Objecting Parties' rights under the policies are being diminished by the settlement, that result occurs by operation of state insurance law, not the injunction.

On its face, the argument has some appeal, but unfortunately, it relies on an unproven assumption here, i.e, that the proposed payment from Sentinel actually exhausts the policy limits. The settling parties vigorously disputed whether the E.coli outbreak should be treated as an occurrence, with a $5,000,000 limit, or the aggregate, with a limit of $6,000,000. They agreed to compromise at $5,250,000. If this was an occurrence, then Sentinel may have a valid point. But if not, and the limit is $6,000,000, Sentinel's duty to indemnify and defend the Objecting Parties would not yet be discharged. So, the settlement may or may not impair the rights of the additional insureds via the injunction cutting off the opportunity to seek indemnification and defense. Absent clear evidence indicating the policy limits are indeed exhausted by the settlement amount, the court cannot find that non-bankruptcy law supports the entry of such a broad injunction.

Moreover, Sentinel fails to address the elephant in the room – that the injunction also prohibits the Objecting Parties from filing a bad faith claim against it for settling with SoyNut. Illinois courts have consistently upheld the right of an insurer in a multi-party dispute to settle with one insured for the policy limits *as well as* the right of the non-settling insured to pursue an action against the insurer for breach of the duty of good faith. *See, e.g., Kirk v. Allstate Ins. Co.*, 969 N.E.2d 980 (Ill. App. Ct. 5th Dist. 2012); *Phelan v. State Farm Mutual Automobile Ins. Co.*, 448 N.E.2d 579 (Ill. App. Ct. 1st Dist. 1983). The court recognizes that Sentinel is in a tough position here as an insurer. Since no actual lawsuit has been filed against the Objecting Parties, it is arguable whether the tender of claims is sufficient to trigger Sentinel's duty to defend or indemnify. *See Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995) ("[w]hether an insurer's duty to defend has arisen is determined by looking to the allegations in the complaint and comparing those allegations to the policy provisions. ... the duty to defend extends only to suits and not to allegations, accusations or claims which have not been embodied within the context of a complaint.").

But no one seriously disputes that all downstream distributors of SoyNut products, which includes the Objecting Parties, face significant exposure as the anticipated damages will quickly exceed the policy limits, leaving injured claimants with no recourse but to pursue all other potentially liable parties. In fact, the settlement procedures contemplate this scenario, in building in for those parties a dollar-for-dollar reduction in liability for settlements paid through the E.coli fund, and the opportunity to broker their own settlements and releases based on the independent damages assessment. As such, the court is hard pressed to find that entry of an injunction cutting off the additional insureds' rights under non-bankruptcy law to challenge the settlement would be appropriate.

*In re Sportstuff, Inc.* is instructive on this point. There, the court refused to approve a settlement injunction that "impermissibly dispossesses the [additional insured] Vendors of the rights to bring bad faith claims against the Insurers." *In re Sportstuff, Inc.*, 430 B.R. 10, 178 (B.A.P. 8th Cir. 2010). It found that "a non-settling insured does not have the right to prevent an insurer from entering into a settlement, but the non-settling insured does have a right to bring a bad faith claim against the insurer if it believes that the settlement as improper." *Id.* at 179. The problem is not, as the Objecting Parties seem to argue, that they have not been given a seat at the table for the settlement discussions with the insurer, a fact disputed by the Trustee and counsel for several of the claimants. Rather, the concern is with ensuring that the right afforded to other insureds under state law to raise this issue is actually preserved. In this court's view, a "fair and reasonable" settlement that proposes to essentially exhaust the policy limits in favor of SoyNut should, at a minimum, consider carving out that right for the objecting non-settling parties.

### III. Settlement Approval

While the court has concluded that the injunction in the Sentinel settlement is overly expansive and improperly impairs the contractual rights of the Objecting Parties, that does not mean a sale and buyback agreement in a Chapter 7 mass tort case that relies on a channeling injunction can never be approved by the bankruptcy court. The Objecting Parties challenge this court's jurisdiction to even entertain a third-party release of a non-debtor, but that argument misses the mark. Before the court is a core proceeding concerning "orders approving the sale of property," 28 U.S.C. § 157(b)(2)(N), over which jurisdiction is clearly conferred by 28 U.S.C. § 1334(b) and 28 U.S.C. § 151. In addition, court approval is required under Federal Rule of Bankruptcy Procedure 9019, of settlements and releases. *Cf. In re Matter of Specialty Equipment Cos., Inc.*, 3 F.2d 1043, 1045 (7th Cir. 1993) ("as a preliminary matter, we note that a bankruptcy court does

have the power to determine the legality of provisions, including releases, incorporated into a reorganization plan"); *In re Matter of Energy Co-Op, Inc.*, 886 F.2d 921, 929 (7th Cir. 1989) (authority under section 105(a) "includes the power to issue an injunction enjoining third parties from pursuing actions which are the exclusive property of the debtor estate and are dismissed pursuant to a settlement agreement").

Moreover, Objecting Party Mitsui is incorrect in stating that there are "*no* circumstances where the Court can approve a non-debtor release in a corporate Chapter 7 case." (Mitsui Resp. in Opp. To Mot. to Approve Settlement, Dkt. #87, at 15) (emphasis in original). In fact, "[i]t makes no difference whether the channeling injunction is entered in a Chapter 11 or Chapter 7 case, so long as it furthers a §363 sale." *In re Sunland, Inc.*, 2014 WL 7011747, at *6 (D. New Mexico Dec. 11, 2014) (collecting cases). The "cramped interpretation" of the bankruptcy court's authority urged by Mitsui has been soundly rejected by the Seventh Circuit. "Though section 105(a) does not give the bankruptcy court carte blanche—the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code . . .—it grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *In re Caesars Entertainment Operating Co. Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015).

The Trustee is absolutely correct that the goal in a Chapter 7 liquidation proceeding is to maximize estate value and foster equitable distribution of assets to creditors. (Tr. Omnibus Reply in Support of Mot. To Approve, Dkt. #90, at 12). With that in mind, the question for this court when evaluating releases under section 105(a) is "whether the injunction . . . is likely to enhance the prospects for a successful resolution of the disputes attending its bankruptcy." *Caesars*, 808 F.3d at 1188. Nowhere does the Seventh Circuit suggest that analysis is limited to Chapter 11

reorganizations, as Mitsui asserts. Consequently, this court will not read such an arbitrary restriction into that language either.

The court commends the Trustee for working diligently to reach a resolution which likely represents the most fair and efficient way to review all potential claims, evaluate damages, and distribute payouts. Without the settlement fund, the victims will be left to recover whatever they can get from a limited insurance policy owned by a non-operational company with no assets. The situation is not ideal for any of the parties with interests at stake here. But even those laudable goals cannot justify imposing such a broad injunction over the objection of the additional insureds whose independent contractual rights are being impacted here.

## **CONCLUSION**

The Sentinel Settlement cannot be approved with this injunction. However, the court is hopeful that the parties can propose an acceptable remedy that recognizes and protects the rights of all interested parties.

Dated: August 1, 2018

ENTER:

*/s/ LaShonda A. Hunt*
Hon. LaShonda A. Hunt
United States Bankruptcy Judge